THE STATE OF OHIO, APPELLEE, *v.* D.W., APPELLANT.

[Cite as *State v. D.W.,* 133 Ohio St.3d 434, 2012-Ohio-4544.]

*Juvenile law—R.C. 2152.12(B)(3) amenability hearing can be waived under proper procedures—Judgment reversed, and cause remanded.*

(No. 2011-1677—Submitted June 5, 2012—Decided October 4, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 95750, 2011-Ohio-4096.

_____

SYLLABUS OF THE COURT

An amenability hearing under R.C. 2152.12(B)(3) may be waived provided (1) the juvenile, through counsel, expressly states on the record a waiver of the amenability hearing and (2) the juvenile court engages in a colloquy on the record with the juvenile to determine that the waiver was made knowingly, voluntarily, and intelligently.

_____

O'CONNOR, C.J.

{¶ 1} In this appeal, we decide whether a hearing to determine a juvenile's amenability to care or rehabilitation in the juvenile system may be waived, and we set forth the standard for valid waiver. For the reasons that follow, we hold that the record does not support a finding that D.W. waived his right to an amenability hearing. Accordingly, we reverse the judgment of the court of appeals and remand this case to the juvenile court for an amenability hearing or proper waiver of it.

**Background**

{¶ 2} Appellant, D.W., was charged with burglary, a felony, and other crimes in the Cuyahoga County Court of Common Pleas, Juvenile Division, case No. DL 09-121602. At the time of the offenses, D.W. was 17 years old.

**{¶ 3}** The juvenile court conducted a probable-cause hearing. After stipulating to D.W.'s birth date, the juvenile court heard testimony from Shanay Ball, a victim of the crimes. The juvenile court stated, "Based on the testimony, the Court finds that there is probable cause here." The juvenile court then noted that transfer of jurisdiction to adult court was discretionary and that D.W. had been bound over in a prior case. The following exchange occurred:

> [DEFENSE COUNSEL]: So the Court's aware he has been bound. He does have a prior bindover that the Court has just to refresh the Court's recollection.
>
> THE COURT: Yes. He has a bindover pending, right?
>
> [DEFENSE COUNSEL]: He actually was bound over.
>
> [ASSISTANT PROSECUTOR]: And been indicted in adult court.
>
> THE COURT: Right. Right. I mean, so he has a case pending that was transferred, but that hasn't been—
>
> [DEFENSE COUNSEL]: Resolved in any way, no.
>
> THE COURT: —resolved yet. Okay. All right. So we'll have to refer him to our Clinic here at the Court for a full psychological.
>
> [ASSISTANT PROSECUTOR]: Your Honor, I believe we've had some preliminary discussions about waiving the amenability. It has already been found. I don't even know that we need to waive amenability.
>
> [DEFENSE COUNSEL]: If we could approach, your Honor.
>
> THE COURT: Yes. Okay.
>
> * * *

2

(Discussion held off of the record.)

\* \* \*

THE COURT: Okay. All right. Because this Court has already found this alleged delinquent to be not amenable to the juvenile justice system on a prior case in which the Court transferred jurisdiction to the adult court, the Court in this case then will, based on this probable cause finding will then—we will transfer this case over to the adult court, as well, without having another amenability hearing. And so we will not refer him to the Court Clinic at this time.

**{¶ 4}** D.W. was subsequently bound over to the common pleas court and indicted by the Cuyahoga County Grand Jury on one count each of burglary, theft, vandalism, and criminal damaging and two counts of bribery. A jury acquitted him of bribery, but found him guilty of the other charges. He was sentenced to six years in prison and mandatory postrelease control.

**{¶ 5}** The Eighth District Court of Appeals affirmed the decision. *State v. D.W.*, 8th Dist. No. 95750, 2011-Ohio-4096. In doing so, it concluded that "the juvenile court first held a probable cause hearing but then never held an amenability hearing." *Id.* at ¶ 30. Without elaboration, the appellate court then held that although the juvenile court did not conduct the amenability hearing, D.W., "through his counsel, waived the amenability hearing." *Id.* It concluded that the juvenile court did not abuse its discretion in transferring the case to the common pleas court. *Id.*

**{¶ 6}** D.W. appealed, and we accepted the cause as a discretionary appeal. *State v. D.W.*, 130 Ohio St.3d 1493, 2011-Ohio-6556, 958 N.E.2d 956. Two propositions of law are before us:

(1) The R.C. 2152.12(B)(3) amenability hearing cannot be waived.

(2) Waiver of the R.C. 2152.12(B)(3) amenability hearing before the juvenile court is not valid unless it is expressly stated on the record by the juvenile through his or her counsel, and the trial court must determine through a colloquy with the juvenile that the waiver is voluntarily, knowingly, and intelligently made.

## ANALYSIS

**A.** ***A juvenile has a right to an amenability hearing to determine if the juvenile can remain within the juvenile justice system or be bound over to adult court, and pursuant to Juv.R. 3,[1] the juvenile may waive the right to the amenability hearing***

1. *The Juvenile Court Milieu*

**{¶ 7}** More than 40 years ago, the court recognized that juvenile courts are "rooted in social welfare philosophy rather than in the corpus juris." *Kent v. United States*, 383 U.S. 541, 554, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). "The juvenile courts were premised on profoundly different assumptions and goals than a criminal court, *United States v. Johnson* (C.A.D.C.1994), 28 F.3d 151, 157 (Wald, J., dissenting), and eschewed traditional, objective criminal standards and retributive notions of justice." *In re C.S.*, 115 Ohio St.3d 267, 274, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 66. The objectives of the juvenile court "are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment." *Kent* at 554.

---

1. Juv.R. 3 was amended on July 1, 2012, 132 Ohio St.3d lxx. Because D.W.'s probable-cause hearing took place in 2010, our references to this rule are to the former version, 69 Ohio St.3d CXLVII, unless otherwise noted. As it pertains to D.W.'s issue before us, Juv.R. 3 has not changed.

4

**{¶ 8}** The United States Supreme Court recently reiterated that juveniles have "diminished culpability" and are therefore " 'less deserving of the most severe punishments.' " *Miller v. Alabama*, __ U.S.__, 132 S.Ct. 2455, 2464, 183 L.Ed.2d 407 (2012), quoting *Graham v. Florida*, __ U.S.__, 130 S.Ct. 2011, 2026, 176 L.Ed.2d 825 (2010). Because of juveniles' " 'lack of maturity and an underdeveloped sense of responsibility,' " they "are more * * * susceptible to negative influences and outside pressures, including peer pressure," and their characters are "not as well formed." *Roper v. Simmons*, 543 U.S. 551, 569-570, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), quoting *Johnson v. Texas*, 509 U.S. 350, 367, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). Accordingly, the actions of juveniles are less likely to be evidence of "irretrievably depraved character" than are the actions of adults. *Id*. at 570. "From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." *Id*. *See also Miller*, __ U.S.__, 132 S.Ct. 2455, 2464-2465, 183 L.Ed.2d 407, and fn. 5.

**{¶ 9}** But in response to a rise in rates and severity of juvenile crime and the belief that not all juveniles can be rehabilitated, in 1969, the General Assembly enacted a statutory scheme that provides for some juveniles to be removed from the juvenile courts' authority. One such provision, R.C. 2152.12, formerly R.C. 2151.26, Am.Sub.H.B. No. 320, 133 Ohio Laws, Part III, 2040, 2049-2050, is at issue in this appeal. That statute allows juvenile courts to transfer certain juveniles to adult court to face criminal sanctions.

**{¶ 10}** "Two types of transfer exist under Ohio's juvenile justice system: discretionary and mandatory." *State v. Hanning*, 89 Ohio St.3d 86, 728 N.E.2d 1059 (2000). "Mandatory transfer removes discretion from judges in the transfer decision in certain situations." *Id*., *see* R.C. 2152.12(A). "Discretionary transfer, as its name implies, allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation

within the juvenile system or appear to be a threat to public safety." *Id*.; *see* R.C. 2152.12(B).

{¶ 11} In instances of discretionary transfer, as in this case,

> the juvenile court is also to determine the age of the child and whether probable cause exists to believe that the juvenile committed the act charged. R.C. 2152.10(B) and 2152.12(B)(1) and (2). However, if probable cause exists and the child is eligible by age, the juvenile court must then continue the proceeding for a full investigation. R.C. 2152.12(C) and Juv.R. 30(C). This investigation includes a mental examination of the child, a hearing to determine whether the child is "amenable to care or rehabilitation within the juvenile system" or whether "the safety of the community may require that the child be subject to adult sanctions," and the consideration of 17 other statutory criteria to determine whether a transfer is appropriate. Juv.R. 30(C); R.C. 2152.12(B), (C), (D), and (E).

*In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 12.

{¶ 12} An amenability hearing helps determine whether a juvenile who is eligible for discretionary bindover will be transferred to adult court. A critical stage of the juvenile proceedings, the hearing affects whether the juvenile faces a delinquency adjudication, or adult criminal sanctions and the label "felon." *Kent*, 383 U.S. at 560, 86 S.Ct. 1045, 16 L.Ed.2d 84. Given the nature and consequences of the amenability hearing, juvenile court judges are entrusted with significant authority when conducting the hearings.

{¶ 13} The role of parens patriae is not the juvenile court's sole focus during an amenability hearing. Procedural protections are vital.

{¶ 14} "The State is parens patriae * * * [b]ut the admonition to function in a 'parental' relationship is not an invitation to procedural arbitrariness." *Id.* at 554-555. In *Kent*, the Supreme Court decided whether a juvenile court properly waived jurisdiction over a juvenile before transferring him to criminal court. *Id.* at 552. Before the transfer, the juvenile court judge did not hold a hearing and did not confer with the juvenile, his counsel, or his parents. *Id*. at 546. The United States Supreme Court held that "as a condition to a valid waiver order, [the juvenile] was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision" before being transferred to the adult court for criminal prosecution. *Id*. at 557. It insisted that the hearing "must measure up to the essentials of due process and fair treatment," *id*. at 562, including "constitutional principles relating to due process and the assistance of counsel," *id*. at 557.

{¶ 15} Ten years later, in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the United States Supreme Court again confirmed that a juvenile court must recognize a juvenile's due process rights. *Gault* held that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." *Id*. at 13. That decision led the states, including Ohio, to look at the process they used to adjudicate juveniles.

> In the wake of *Gault* and its progeny, we also found that "numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to juvenile delinquency proceedings," *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 26, and overruled prior decisions that held to the contrary, see *In re Agler*, 19 Ohio St.2d [70,] at 76, 48 O.O.2d 85, 249 N.E.2d 808 [(1969)].

*In re C.S.*, 115 Ohio St.3d, 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 73.

{¶ 16} One such constitutional safeguard that has been extensively developed through our jurisprudence has been a juvenile's right to counsel. See *id.*, paragraph two of the syllabus (a juvenile may waive the right to counsel); *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, syllabus (a juvenile who is the subject of a parental-rights termination has a statutory right to counsel.

{¶ 17} Today, we analyze another vital safeguard: the juvenile's right to an amenability hearing before being transferred from juvenile court to adult court.

2. *The Relevant Statutory Scheme*

{¶ 18} The General Assembly codified the right to an amenability hearing in discretionary bindovers in R.C. 2152.12(B). That statute provides,

Except as provided in division (A) of this section, after a complaint has been filed alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult, the *juvenile court at a hearing* may transfer the case if the court finds all of the following:

(1) The child was fourteen years of age or older at the time of the act charged.

(2) There is probable cause to believe that the child committed the act charged.

(3) *The child is not amenable to care or rehabilitation within the juvenile system*, and the safety of the community may require that the child be subject to adult sanctions. In making its decision under this division, the court shall consider whether the applicable factors under division (D) of this section indicating that

8

the case should be transferred outweigh the applicable factors under division (E) of this section indicating that the case should not be transferred. The record shall indicate the specific factors that were applicable and that the court weighed.

(Emphasis added.)

{¶ 19} The right to a hearing is also set forth in our rules of procedure for the juvenile courts.  Pursuant to Juv.R. 30,

> **(A)  Preliminary hearing.**
>
> In any proceeding where the court considers the transfer of a case for criminal prosecution, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that the act would be an offense if committed by an adult. The hearing may be upon motion of the court, the prosecuting attorney, or the child.
>
> * * *
>
> **(C) Discretionary transfer.**
>
> In any proceeding in which transfer of a case for criminal prosecution is permitted, but not required, by statute, and in which probable cause is found at the preliminary hearing, the court shall continue the proceeding for full investigation. The investigation shall include a mental examination of the child by a public or private agency or by a person qualified to make the examination. When the investigation is completed, *an amenability hearing shall be held to determine whether to transfer jurisdiction.* The criteria for transfer shall be as provided by statute.

(Emphasis added.)

**{¶ 20}** The safeguard of a hearing is contained in the Revised Code and Rules of Juvenile Procedure, and it is grounded in due process and other constitutional protections. As the United States Supreme Court makes clear, "there is no place in our system of law for reaching a result [the transfer of a juvenile to adult court] of such tremendous consequences, without ceremony— without hearing, without effective assistance of counsel, without a statement of reasons." *Kent*, 383 U.S. at 554, 86 S.Ct. 1045, 16 L.Ed.2d 84.

**{¶ 21}** D.W. argues that by using "shall," R.C. 2152.12(B)(3) and Juv.R. 30 require the juvenile court to perform an amenability hearing before determining whether to transfer a juvenile from the juvenile court system to the adult criminal system. We agree. We have no doubt that a juvenile's right to an amenability hearing, like a juvenile's right to counsel, is compelled by federal due process protections, *Kent* at 557, our statutory framework, R.C. 2152.12(B), and our rules, Juv.R. 30. But in so holding, we also make clear that contrary to D.W.'s assertions, the amenability hearing can be waived under Juv.R. 3.

**{¶ 22}** D.W. contends that because Juv.R. 3 deals with the rights of the child, but R.C. 2152.12 and Juv.R. 30 deal with the juvenile court's duty to act as parens patriae, the statute and the rule impose a duty upon the juvenile court that cannot be waived by the juvenile.

**{¶ 23}** Juv.R. 3 states that although a juvenile may not waive his right to be represented by counsel at a Juv.R. 30 hearing, "[o]ther rights of a child may be waived with permission of the court." But the rule does not identify those "other rights." We must therefore determine whether "other rights" include the right to an amenability hearing.

**{¶ 24}** Even though "[t]here is a presumption against the waiver of constitutional rights," an individual can still waive his constitutional rights as long as the waiver is made knowingly and intelligently and is an intentional

10

relinquishment of a known right. *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). We hold similarly. *See, e.g., In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 95, citing *In re Gault*, 387 U.S. at 41-42, 87 S.Ct. 1428, 18 L.Ed.2d 527 (a "juvenile may waive his rights").

{¶ 25} It is important to note that pursuant to Juv.R. 3, juveniles may waive their "other rights," but only "with the permission of the court." The quoted language reflects the notion that the juvenile court must not abandon its roles as parens patriae and protector of the due process rights of the juvenile. Thus, the court must ensure that the juvenile's waiver of the right to an amenability hearing is made knowingly, intelligently, and intentionally and that it is a voluntary relinquishment of a known right. By constructing the rule in this manner, we reconcile, as we must, the parens patriae duty of the juvenile court with the due process rights and autonomy of the juvenile.

{¶ 26} We therefore hold that one of the "other rights" that may be waived under Juv.R. 3 is the right to an amenability hearing.

{¶ 27} We now turn to the manner in which any waiver of the amenability hearing must take place and the standards that juvenile judges should follow in determining whether the waiver is proper.

**B.** *For a juvenile to properly waive the right to an amenability hearing, the waiver must be expressly stated on the record by the juvenile, through counsel, and the juvenile court must determine, through colloquy with the juvenile, that the waiver is made voluntarily, knowingly, and intelligently*

{¶ 28} Waiver is often presented in the context of right to counsel. In *In re C.S.,* 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, we set forth the requirements for a valid waiver of right to counsel, which have been incorporated into the new Juv.R. 3. We conclude that the same reasoning applies here and adopt a standard similar to that for waiver of the right to counsel for the waiver of the right to an amenability hearing.

**{¶ 29}** In *In re C.S.*, we held:

An effective waiver of the right to counsel by a juvenile must be voluntary, knowing, and intelligent. *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph one of the syllabus. In a juvenile court proceeding in which the judge acts as parens patriae, the judge must scrupulously ensure that the juvenile fully understands, and intentionally and intelligently relinquishes, the right to counsel. Id. at paragraph two of the syllabus; * * * *In re Manuel R.*, 207 Conn. [725,] 737-738, 543 A.2d 719 [(1988)] ("It is now commonly recognized that courts should take 'special care' in scrutinizing a purported confession or waiver by a child"), citing *Haley* [*v. Ohio*], 332 U.S. [596,] 599, 68 S.Ct. 302, 92 L.Ed. 224 [(1948)].

In the discharge of that duty, the judge is to engage in a meaningful dialogue with the juvenile. Instead of relying solely on a prescribed formula or script for engaging a juvenile during the consideration of the waiver, see *Iowa v. Tovar* (2004), 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209, the inquisitional approach is more consistent with the juvenile courts' goals, and is best suited to address the myriad factual scenarios that a juvenile judge may face in addressing the question of waiver.

*Id*. at ¶ 106-107.

**{¶ 30}** The holding in *In re C.S.* was incorporated into the new Juv.R. 3, which also addresses a juvenile's right to waive counsel.

**{¶ 31}** Juv.R. 3(D) now sets forth specific criteria that must be followed in order for the waiver to be valid:

> Any waiver of the right to counsel shall be made in open court, recorded, and in writing. In determining whether a child has knowingly, intelligently, and voluntarily waived the right to counsel, the court shall look to the totality of the circumstances including, but not limited to: the child's age; intelligence; education; background and experience generally and in the court system specifically; the child's emotional stability; and the complexity of the proceedings. The Court shall ensure that a child consults with a parent, custodian, guardian, or guardian ad litem, before any waiver of counsel. However, no parent, guardian, custodian, or other person may waive the child's right to counsel.

{¶ 32} Because the same underlying principles that we addressed regarding the nature of juvenile courts in the context of a juvenile's waiver of his right to counsel are present in our analysis of a juvenile's waiver of an amenability hearing, we conclude that the holding in *In re C.S.* and the language of Juv.R. 3 are persuasive and applicable to the standard that we adopt today.

{¶ 33} Cognizant of the parens patriae duty of the juvenile court, the due process rights of the juvenile, the General Assembly's expression of public policy in R.C. 2152.12, Juv.R. 3 and 30, and precedent, *see, e.g.*, *Kent* and *In re C.S.,* we hold that in situations in which a juvenile is subject to discretionary transfer and the juvenile wishes to waive the right to an amenability hearing, the juvenile court must engage in a two-step process to determine the validity of the waiver.

{¶ 34} First, before being transferred, the juvenile may waive the right to an amenability hearing only if the waiver is expressly stated on the record and through counsel.

**{¶ 35}** The requirement that the juvenile expressly state on the record that he or she is waiving the right to an amenability hearing demonstrates that the waiver is an " ' "intentional relinquishment or abandonment of a known right." ' " *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 31, quoting *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The requirement that the juvenile requests the waiver on the record also allows the juvenile court to fulfill its duty to protect the due process rights of the juvenile.

**{¶ 36}** Moreover, the child's right to counsel is required by Juv.R. 3, which provides that a child may not waive the right to be represented by counsel at a transfer hearing conducted pursuant to Juv.R. 30. By requiring counsel to enter the request, there can be no question that the child was represented as required and no question that the juvenile has received "the assistance of counsel to cope with problems of law." *Gault*, 387 U.S. at 36, 87 S.Ct. 1428, 18 L.Ed.2d 527.

**{¶ 37}** Second, the juvenile court must determine that the waiver is offered knowingly, voluntarily, and intelligently. Proper determination must include a colloquy with the juvenile and must occur on the record. The colloquy allows the juvenile court to fulfill its parens patriae duty by ensuring that the juvenile fully understands and intentionally and intelligently relinquishes the right to an amenability hearing. And it allows the judge "to engage in a meaningful dialogue with the juvenile," *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 107, to guarantee that the juvenile's due process rights are protected.

**{¶ 38}** Additionally, by requiring the court to determine that the waiver is made knowingly, voluntarily, and intelligently, we comport with the plain

language of Juv.R. 3, which states that rights of a child may be waived "with the permission of the court."

{¶ 39} Finally, requiring that a meaningful colloquy between the juvenile court and the juvenile occur on the record provides an additional due process safeguard to protect the juvenile. It also is consistent with the language of R.C. 2152.12(B)(3), which states, "The record shall indicate the specific factors that were applicable and that the court weighed" when deciding whether a child is amenable to rehabilitation.

{¶ 40} In fact, this case illustrates the problems that arise when waivers are not clearly set forth on the record. There is no evidence in the record to support a finding that D.W., either himself or through his counsel, waived his right to an amenability hearing. The record lacks any meaningful discussion about the amenability hearing. Absent an express statement on the record by either D.W. or his counsel requesting waiver of his right to an amenability hearing, we will not hold that D.W. waived this right.[2]

{¶ 41} We recognize that the state argues that the amenability hearing was properly waived and that the court of appeals agreed. However, based upon the record before us, there is no indication of a proper waiver.

---

2. We recognize the state's argument that D.W.'s failure to object to the juvenile court's decision not to conduct an amenability hearing acts as a forfeiture and that he waives all but plain error. We are not persuaded.

Initially, we observe that the state did not raise the issue of waiver to the court of appeals in response to D.W.'s appeal. It cannot present that claim here in the first instance. *See, e.g.*, *State v. Chinn*, 85 Ohio St.3d 548, 565, 709 N.E.2d 1166 (1999) (party who failed to raise an issue to the court of appeals waived his arguments); *see also State v. Scudder*, 71 Ohio St.3d 263, 268, 643 N.E.2d 524 (1994).

Second, although the record in this case does not contain any objection by the defense to the failure of the juvenile court to conduct an amenability hearing, and we will not presume that any objection was made, we hold that D.W. timely raised this issue on appeal. *See State v. Douglas*, 20 Ohio St.3d 34, 35, 485 N.E.2d 711 (1985) (juvenile who was transferred to adult court, pled guilty to charges, and was subsequently convicted appealed convictions alleging that the bindover proceeding was not proper).

### C. *Application*

**{¶ 42}** The two-step process we set forth today effectively balances the parens patriae duty of the juvenile court with the juvenile's due process rights while comporting with the plain language of R.C. 2152.12, Juv.R. 3 and 30, and our jurisprudence. We turn now to its application here.

**{¶ 43}** At the outset, we address the state's argument on implied waiver. An implied waiver runs counter to the very idea of our definition of waiver: an "intentional relinquishment or abandonment of a known right." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 31, quoting *Johnson*, 304 U.S. at 464, 58 S.Ct. 1019, 82 L.Ed. 1461. The record is devoid of any evidence that D.W. or his counsel intentionally relinquished or abandoned his right to an amenability hearing. There is no evidence that the juvenile knew he had a right to an amenability hearing. The judge failed to recognize a need for further inquiry of the juvenile as to whether he knowingly, intelligently, and voluntarily dispensed with an amenability hearing.

**{¶ 44}** Based on the language in the record, the juvenile court found that an amenability hearing was not required, because he had found probable cause, and D.W. had been bound over in a prior case. The state argues that it is impractical to prevent a juvenile from waiving an amenability hearing after he has already been found not to be amenable to the juvenile justice system. Again, we must disagree.

**{¶ 45}** Each case presented to the juvenile court must be assessed upon its own merits. In *State v. Adams*, 69 Ohio St.2d 120, 431 N.E.2d 326 (1982), this court held that once a juvenile is bound over, the juvenile is bound over for all future felonies. *Id.*, syllabus. However, the General Assembly expressly overruled this holding as acknowledged in the legislative notes to R.C. 2151.011:

> The General Assembly hereby declares that its purpose in enacting the language in division (B) of section 2151.011 and divisions (B) and (C) of section 2151.26 of the Revised Code that exists on and after the effective date of this act *is to overrule the holding in* State v. Adams (1982), 69 Ohio St.2d 120 [431 N.E.2d 326], *regarding the effect of binding a child over for trial as an adult*.

(Emphasis added.) Am.Sub.H.B. No. 1, Section 3(B), 146 Ohio Laws, Part I, 1, 96.

**{¶ 46}** In other words, in the wake of *Adams*, the General Assembly prohibited juvenile courts from holding that once a juvenile has been bound over to adult court, the juvenile will be bound over in all future felonies. We must respect the right of the General Assembly to limit our holdings as long as the constitution permits it do so. Here, the legislature acted within its role, and we must give effect to legislative intent and ensure that our juvenile courts do so as well. *State v. Elam*, 68 Ohio St.3d 585, 587, 629 N.E.2d 442 (1994). According to statute then, a juvenile court cannot bind over a juvenile on the sole basis that the juvenile has been previously bound over.

## CONCLUSION

**{¶ 47}** We hold that an amenability hearing under R.C. 2152.12(B)(3) may be waived provided (1) the juvenile, through counsel, expressly states on the record a waiver of the amenability hearing and (2) the juvenile court engages in a colloquy on the record with the juvenile to determine that the waiver was made knowingly, voluntarily, and intelligently.

**{¶ 48}** Here, the juvenile court failed to conduct an amenability hearing before transferring D.W. to adult court, based upon the mistaken belief that a prior bindover of the juvenile negated the need for an amenability hearing. The court

thus never asked the juvenile whether he was waiving the hearing. Accordingly, we reverse the judgment of the court of appeals and remand the cause to the juvenile court for an amenability hearing, or proper waiver of it, consistent with this opinion.

Judgment reversed

and cause remanded.

PFEIFER, LUNDBERG STRATTON, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

O'DONNELL, J., concurs in judgment only.

_____

Timothy McGinty, Acting Cuyahoga County Prosecuting Attorney, and Daniel T. Van and Katherine Mullin, Assistant Prosecuting Attorneys, for appellee.

Robert L. Tobik, Cuyahoga County Public Defender, and Nathaniel J. McDonald, Assistant Public Defender, for appellant.

Timothy Young, Ohio Public Defender, and Jill Beeler, Assistant Public Defender, urging reversal for amicus curiae, Ohio Public Defender.

_____